IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER C.,[1]

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

        Defendant.

Case No. 6:20-cv-00959-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Christopher C. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in April 1973, making him forty-three years old on September 1, 2016, his alleged disability onset date. (Tr. 32, 61, 91.) Plaintiff graduated from high school and has

PAGE 2 – OPINION AND ORDER

past relevant work experience as a retail manager. (Tr. 32, 45, 55.) In his applications, Plaintiff alleged disability due to agoraphobia and obsessive compulsive, bipolar, and anxiety disorders. (Tr. 92.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on January 16, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 24.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on February 7, 2019. (Tr. 42-58.) On March 27, 2019, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 24-34.) On April 17, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 3-9.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 24-34.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2016, his alleged disability onset date. (Tr. 26.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[R]ight shoulder calcific tendinitis, cannabis use disorder/dependence, obsessive-compulsive disorder (OCD), bipolar disorder, and anxiety disorder[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 27.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff can occasionally crawl and reach overhead with his right upper extremity; (2) Plaintiff can never climb ladders, ropes, or scaffolds; (3) Plaintiff "can understand, remember, and carry out only short and simple instructions"; (4) Plaintiff "can only make simple work-related judgments and decisions consistent with level two reasoning that can be learned in 30 days or less"; and (5) Plaintiff can have no more than occasional interactive contact with the general public and no more than frequent interactive contact with co-workers and supervisors.

PAGE 4 – OPINION AND ORDER

(Tr. 29.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a retail manager. (Tr. 32.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a production assembler, electrician assistant, and routing clerk. (Tr. 33.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide legally sufficient reasons for discounting the opinion of Plaintiff's nurse practitioner, Michael McNamara ("McNamara"); (2) provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (3) consider the lay witness testimony provided by Plaintiff's father, Keith C. (Pl.'s Opening Br. at 7, 11, 14.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record.

I.    **MEDICAL OPINION EVIDENCE**

    A.    **Applicable Law**

Plaintiff filed his applications on April 18, 2017. (Tr. 24.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v.*

PAGE 5 – OPINION AND ORDER

*Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "'this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion.'" *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "'the more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding.'" *Id.*

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to

consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).[3]

### B. Analysis

Plaintiff argues that the ALJ committed harmful error by failing to provide any reasons, let alone legally sufficient reasons, for discounting McNamara's opinion. (Pl.'s Opening Br. at 7-10.) The Court agrees.

The ALJ found McNamara's opinion that Plaintiff "cannot work due to anxiety . . . not persuasive." (Tr. 32.) The ALJ, however, failed to provide any explanation in support of this finding:

> The opinion of [McNamara] . . . that the claimant cannot work due to anxiety is not persuasive. He states that the claimant's anxiety grows 'so easily to a fever pitch with any change, and he becomes obsessive.' McNamara cited as evidence that the claimant was unable to process a change in his medication dosing until McNamara wrote it down for him, and obsessed about the change as the interview ended.

(Tr. 32, citing Tr. 623, 649.)

The Commissioner argues that any error in the ALJ's assessment of McNamara's opinion was harmless because McNamara's "statements do not assess any specific work-related functions" and McNamara opined only on "issues reserved to the Commissioner." (Def.'s Br. at

---

[3] The parties agree that the new regulations apply here. (Pl.'s Opening Br. at 8; Def.'s Br. at 3.) The Commissioner, however, states that contrary to Plaintiff's suggestion, "certain rules expressed in prior case law," such as the rules about whether clear and convincing or specific and legitimate reasons are needed to discount a medical opinion, "do not govern." (Def.'s Br. at 3.) Consistent with its prior decision addressing this issue, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of McNamara's opinion, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

PAGE 7 – OPINION AND ORDER

4-5.) Plaintiff responds that the ALJ committed harmful error because McNamara "opined on more than the ultimate issue of disability," as he found that Plaintiff was "homebound, unresponsive to medications, unable to form meaningful relations, unable to sustain a single day of continuous employment, and inclined to feverous obsessions and anxiety." (Pl.'s Reply at 2-3.)

The Ninth Circuit has found harmless error when an ALJ failed to evaluate a physician's opinion but otherwise formulated an RFC that was "not inconsistent" with the physician's opinion and accounted for the physician's specific findings. See *Jennings v. Saul*, 804 F. App'x 458, 461 (9th Cir. 2020) (finding that the ALJ's failure to "evaluate" a physician's opinion was harmless because the ALJ formulated an RFC that was "not inconsistent" with the physician's opinion and accounted for the physician's specific finding about the claimant's mild to moderate difficulties with social and occupational interactions). The Ninth Circuit has also found harmless error when an ALJ "failed to fully discuss" a physician's examination records because the claimant failed to point to a particular record that would have established the existence of work-related limitations. See *Merritt v. Colvin*, 572 F. App'x 468, 470 (9th Cir. 2014) ("[T]he ALJ did not err by 'failing to fully discuss' [the physician's] examination records because [the claimant] does not point to any particular record from [the physician] which would establish the existence of work-related limitations."). Furthermore, the Ninth Circuit has found harmless error when an ALJ failed to discuss witness testimony that was "mos[tly]" in the form of conclusions that the claimant was disabled and unable to work because such ultimate determinations are reserved for the ALJ. See *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (holding that the ALJ's "failure to consider" a lay witness's testimony was harmless, emphasizing that "most of [the lay witness's] comments were in the form of conclusions that [the claimant] is

disabled and unable to work outside of a sheltered work environment," which "are ultimate determinations reserved to the ALJ," and adding that "even a treating physician's opinion is not binding on the ultimate determination of disability" (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001))).

The Court agrees with the Commissioner that some of McNamara's opinions were in the form of conclusions that Plaintiff is disabled and unable to work, which are ultimate determinations reserved for the ALJ. For example, in a treatment note dated November 19, 2018, McNamara referred to Plaintiff as "[e]ntirely disabled" and stated that he "cannot conceive of [Plaintiff] being able to work even part time." (Tr. 649.) Similarly, in a treatment note dated September 18, 2017, McNamara addressed the agency's denial of Plaintiff's applications for benefits and stated that there was "no way" he could "conceive [of Plaintiff] being able to work even a menial job [because] his anxiety grows so easily to a fever pitch with any change, and he becomes obsessive—making gainful employment impossible in my professional opinion." (Tr. 623.)

Notably, however, several of McNamara's findings were not conclusions about ultimate issues reserved to the ALJ and appear to conflict with the ALJ's RFC determination. For example, the ALJ formulated an RFC that would allow Plaintiff to have up to "frequent interactive contact with co-workers or supervisors" and "occasional interactive contact with the public." (Tr. 29.) By comparison, in the September 18, 2017 record referenced above, McNamara referred to Plaintiff as "[s]till agoraphobic," stated that Plaintiff's "anxiety increases dramatically when around strangers or having to interact with people," and provided a specific example of an instance where Plaintiff's anxiety grew to a "fever pitch" and Plaintiff became obsessive: "For example, it took at least 5 minutes just to process a simple change in Trileptal

PAGE 9 – OPINION AND ORDER

dosing—until I wrote it down for him. He obsessed about this change even as the [clinical] interview ended. This does not even take into account his Bipolar Disorder limitations." (Tr. 621, 623.)

McNamara's opinions about Plaintiff's social limitations and ability to adapt to simple changes are noteworthy given the ALJ's assessment of the state agency psychologists' opinions. Sergiy Barsukov, Psy.D. ("Dr. Barsukov"), the state agency psychologist who reviewed Plaintiff's records at the reconsideration stage, determined that (1) Plaintiff is "incapable of contact in proximity with the general public" due to his anxiety with agoraphobia, bipolar disorder, and obsessive compulsive disorder, which result in moderate limitations in his ability to interact appropriately with the public; and (2) Plaintiff suffers from moderate limitations in his ability to respond appropriately to changes in the work setting, and therefore "[n]eeds a setting in which tasks are routine and predictable" because he would only be able to adjust to "n[orma]l, occasional, modest changes in the work setting." (Tr. 105-06.) Scott Kaper, Ph.D. ("Dr. Kaper"), the state agency psychologist who initially reviewed Plaintiff's case, offered opinions that differed slightly from Dr. Barsukov's. Dr. Kaper determined that Plaintiff "needs a work setting with no interaction with [the] general public" because he suffers from "significant anxiety and irritability," which results in marked limitations in his ability to interact appropriately with the public. (Tr. 71.) He also found that Plaintiff "has no significant limitations in adaptive skills." (Tr. 71-72.)

In her decision, the ALJ provided a reason for discounting the state agency psychologists' opinions about Plaintiff's ability to tolerate contact with others that Plaintiff does not challenge on appeal. (*See* Tr. 31, the ALJ found the state agency psychologists' opinions about "no contact with the public and very limited contact with others . . . excessive, particularly in light of the

PAGE 10 – OPINION AND ORDER

claimant's normal speech, ability to express his thoughts, and adequate social judgment during his consultative examination," as well as the fact that Plaintiff was "able to work in customer service for many years" before alleging the onset of disability and has "no history of emergency psychiatric treatment, limited history of use of mental health medications and limited history of counseling treatment"). The ALJ, however, failed to address the state agency psychologists' conflicting opinions about Plaintiff's ability to respond appropriately to changes in the work setting. (*See* Tr. 31; *see also Robert S.*, 2021 WL 1214518, at *3 (finding that under the new regulations, the ALJ is still "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical'") (citations omitted)).

Given the ALJ's failure to address these conflicting opinions, the Court cannot conclude that the ALJ committed harmless error by not providing any reasons for discounting McNamara's opinion, because McNamara's findings (e.g., Plaintiff obsessed over a simple change in medication dosing and took at least five minutes to process it) appear to support Dr. Barsukov's opinion that Plaintiff would only be able to adjust to "n[orma]l, occasional, modest changes in the work setting" given that he suffers from moderate limitations in his ability to respond appropriately to changes in the work setting and "[n]eeds a setting in which tasks are routine and predictable." (Tr. 105-06.) An ALJ must include all of a claimant's credible limitations in the RFC and the VE hypothetical derived therefrom, *De Bottom v. Colvin*, 672 F. App'x 749, 751 (9th Cir. 2017), but the ALJ here failed to include any limitations related to Plaintiff's ability to respond to changes in the work setting, or ask the VE about whether any adaptive limitations would prevent Plaintiff from performing the jobs identified as suitable for him, despite McNamara's and Dr. Barsukov's opinions supporting such limitations.

PAGE 11 – OPINION AND ORDER

Based on these reasons, the Court concludes that the ALJ committed harmful error by failing to provide any reasons for discounting McNamara's opinion. Cf. *Jennings*, 804 F. App'x at 461 (finding that the ALJ's failure to "evaluate" a physician's opinion was harmless because the ALJ formulated an RFC that was "not inconsistent" with the physician's opinion and accounted for the physician's specific finding about the claimant's mild to moderate difficulties with social and occupational interactions). Further proceedings are therefore necessary to allow the ALJ to address the state agency psychologists' conflicting opinions about Plaintiff's ability to respond appropriately to work-related changes and McNamara's related opinions.

## II.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity

PAGE 12 – OPINION AND ORDER

and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

      **B.**    **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 29, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard.

      **1.**    **Medication Compliance**

The Commissioner asserts that the ALJ provided three clear and convincing reasons for discounting Plaintiff's testimony. One of those reasons, according to the Commissioner, is that "Plaintiff took his medications inconsistently." (Def.'s Br. at 10.) The Court finds this argument unpersuasive.

As Plaintiff notes in his reply brief, "[t]he record does not support a finding that [he] did not take his medications other than over Christmas in 2016." (Pl.'s Reply Br. at 5.) The record also reflects that McNamara observed that (1) Plaintiff is "sensitive to medications," which "caus[ed] difficulties trying to find an agent that [was] both effective and tolerated," and (2) he does "not see much further improvement after a year of various medication trials[.]" (Tr. 564, 634.) Furthermore, the ALJ observed that Plaintiff's mental health symptoms are not well

PAGE 13 – OPINION AND ORDER

controlled by medication.[4] (*See* Def.'s Br. at 10, "The ALJ observed that Plaintiff's symptoms often were not controlled." (citing Tr. 29-30); *see also* Tr. 30, "Overall, the claimant's medication regime supports his assertions that his mental [health] conditions are not optimally controlled."). Even if Plaintiff was not consistent in taking his medication, the Ninth Circuit "do[es] not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of [the claimant's] underlying mental afflictions." *Garrison*, 759 F.3d at 1018 n.24. The record suggests that any medication compliance issue was at least in part a result of Plaintiff's bipolar disorder and other psychiatric issues. *Cf. id.* ("[T]he record shows that [the claimant's] occasional decisions to go 'off her meds' were at least in part a result of her underlying bipolar disorder and her other psychiatric issues.").

Accordingly, the ALJ erred in discounting Plaintiff's testimony based on his medication compliance.

      **2.**      **Plaintiff's Activities**

The Commissioner also argues that the ALJ reasonably relied on Plaintiff's activities in discounting his testimony. (Def.'s Br. at 9-10.) In her decision, the ALJ noted that Plaintiff's statements about "his activities of daily living reflect some social problems . . . but are otherwise near normal." (Tr. 30.) In support of this finding, the ALJ observed that Plaintiff "can drive, [can do] basic chores, can run errands, can independently schedule and attend appointments, can care

---

[4] The Commissioner also argues that "the ALJ reasonably determined that Plaintiff's . . . treatment [was] effective over time, with appropriate adjustments to [his] medication" (Def.'s Br. at 9), but the ALJ found both that Plaintiff's "conditions are not optimally controlled" and that Plaintiff's "treatment was effective over time" (Tr. 30), which appear to be inconsistent conclusions. *See generally Curtis v. Saul*, 843 F. App'x 901, 903 (9th Cir. 2021) (stating that "impairments that can be controlled effectively with medication are not disabling") (citation omitted).

PAGE 14 – OPINION AND ORDER

for his own bathing and grooming needs (although there are days when he does not shower because he is too depressed), [and] can prepare[] meals and keep[] his place 'okay.'" (*Id.*) The ALJ also observed that Plaintiff "[m]ostly . . . watches television, plays video games, and smokes pot," and Plaintiff "visits with his father, but does not have friends or romantic partners." (*Id.*)

For Plaintiff's activities to have any bearing on the reliability of his testimony, his level of activity must be inconsistent with his claimed limitations (i.e., isolating in his home, suffering from agoraphobia and panic attacks, and having a hard time interacting with others). *See Garrison*, 759 F.3d at 1017 ("[W]e have held that . . . [a claimant's] level of activity [must be] inconsistent with [his] claimed limitations . . . [to] have any bearing on her credibility.") (simplified). The activities on which the ALJ relied here to discount Plaintiff's testimony are not inconsistent with Plaintiff's claimed limitations, as the record reflects that he rarely leaves the house and has very little social interaction. (*See* Tr. 444-46, noting that Plaintiff was "[s]till isolating at home" as of Oct. 18, 2016, and that Plaintiff was "predominantly isolating in his apartment" as of Oct. 23, 2017; Tr. 281-85, Keith C., whose testimony the ALJ failed to address, stated that Plaintiff "cannot interact with people," is "not able to make friends," is "agoraphobic," spends "his life . . . stay[ing] inside and watch[ing] TV," "does not like being around people," has "no friends," participates in "no social activities," and just "stays in a room").

Accordingly, the ALJ erred in discounting Plaintiff's testimony based on his reported activities.

### 3.  Conflicting Medical Evidence

Finally, the Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on conflicting medical evidence, such as unremarkable mental status examinations. (Def.'s Br. at 7-9.) It is well settled that "ALJs are permitted to consider the lack

PAGE 15 – OPINION AND ORDER

of medical evidence, or conflicting medical evidence, in evaluating a plaintiff's subjective symptom testimony, so long as it is not the sole reason for rejecting the plaintiff's testimony." *Colton v. Colvin*, No. 3:15-cv-1962-CL, 2016 WL 7015669, at *4 (D. Or. Sept. 28, 2016) (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Consistent with this understanding, the Court finds that the ALJ erred in discounting Plaintiff's testimony because a lack of objective medical cannot be the sole reason for doing so. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that "[a] lack of objective medical evidence cannot be the sole reason to discredit claimant testimony" (citing *Burch*, 400 F.3d at 681)); *Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1282, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony." (citing *Burch*, 400 F.3d at 680)).

## I.     LAY WITNESS TESTIMONY

### A.     Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting

PAGE 16 – OPINION AND ORDER

the [reliability] of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's [subjective] complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B. Analysis

Plaintiff argues that the ALJ committed harmful error by failing to consider the lay witness testimony provided by Plaintiff's father, Keith C. (Pl.'s Opening Br. at 14.) The Commissioner does not dispute that the ALJ failed to address Keith C.'s lay witness testimony but argues that any error was harmless because Keith C.'s testimony is sufficiently similar to Plaintiff's testimony and, therefore, the clear and convincing reasons the ALJ provided for discounting Plaintiff's testimony apply equally to Keith C.'s. (Def.'s Br. at 11.) The Court disagrees.

As discussed above, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. It therefore follows that the ALJ committed harmful error by failing to address the lay witness testimony provided by Plaintiff's father, Keith C. *See, e.g.*, *Ross v. Berryhill*, 711 F. App'x 384, 387 (9th Cir. 2017) ("The ALJ summarized Sherman's lay witness testimony as 'consistent with the claimant's allegations,' but failed to provide specific clear and convincing reasons for discounting Ross's symptom testimony. Thus, the ALJ's failure to provide germane reasons for discounting Sherman's lay witness testimony is error.").

## II. REMEDY

### A. Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

PAGE 17 – OPINION AND ORDER

explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B. Analysis

The Court concludes that remand is appropriate here for the reasons discussed above. *See Brandon v. Saul*, 821 F. App'x 857, 858 (9th Cir. 2020) ("The district court did not abuse its discretion when it remanded for further administrative proceedings because outstanding issues remain in the record regarding consultative examiner Dr. Michael Kushner's opinion."); *Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain [record] evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings.").

Even if the credit-as-true standard was met here, the Court finds that remanding for an award of benefits is inappropriate in light of record evidence about Plaintiff's drug and alcohol

PAGE 18 – OPINION AND ORDER

use. (*See* Tr. 53, Plaintiff testified that he was "drinking heavily" until six months prior to the hearing; Tr. 508, Feb. 7, 2017, McNamara noted that Plaintiff was "[s]moking cannabis daily" and thought it was "likely [Plaintiff] will for the foreseeable future"; Tr. 332, March 14, 2017, Plaintiff reported that he continued to "smok[e] cannabis" and McNamara "again suggested" to Plaintiff that this "might be part of the problem"; Tr. 349-52, Apr. 13, 2017, Plaintiff told McNamara that he had "partied" and "used meth" he received from a friend, he declined "substance abuse treatment," and he smokes "marijuana three time a day regularly" and "won't quit," and McNamara noted that Plaintiff's mood continued to "fluctuate, though not as severely," and Plaintiff was "[s]till abusing substances but not as badly"; *see also* Tr. 646, Nov. 19, 2018, Plaintiff reported that he was "offered and used methamphetamine once two months ago" and claimed that it was the "first time" he had ever done so).

"Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits 'if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). "Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Id.* at 747 (citation omitted). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability[,]" but "[i]f the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Id.* (citation omitted). Thus, further administrative proceedings are necessary because if the ALJ were to find that Plaintiff is disabled, the ALJ must conduct a DAA Analysis to determine if any disabling limitations would remain if Plaintiff stopped using drugs and alcohol. *See, e.g.*, *Goetz*

*v. Astrue*, No. CV-09-03060-JPH, 2010 WL 3943742, at *6 (E.D. Wash. Oct. 6, 2010) ("The Court's review of the record indicates there are unresolved issues with respect to . . . the materiality of substance abuse, determinations not within the Court's purview. And the Court's review of the record does not clearly require a finding of disability. Under these circumstances remand is necessary.").

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 7th day of September, 2021.

*Stacie F. Beckerman*

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge